IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RICHARD ALLEN NEAL,

     Plaintiff,

v.                               CASE NO. 5:15-cv-71-MW-GRJ

DR. PARKER, et al.,

     Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, a prisoner presently incarcerated at Columbia Correctional Institution, initiated this case by filing an amended complaint pursuant to 42 U.S.C. § 1983 (ECF No. 38).  Plaintiff's claims stem from a surgery to remove his gallbladder and subsequent post-surgery care.   Defendants Parker and Alvarez have filed a motion to dismiss Plaintiff's Complaint for failure to state a claim and failure to exhaust his administrative remedies. (ECF No. 42.)  Upon review of the motion to dismiss and Plaintiff's response, ECF No. 43, it is respectfully recommended that the motion be granted and Plaintiff's claims against Defendants Parker and Alvarez be dismissed.

# I. Plaintiff's Allegations

The factual allegations of the Complaint against Defendants Parker and Alvarez may be summarized as follows.  While incarcerated at Apalachee Correctional Institution ("ACI"), Plaintiff began to experience sharp pains in his rib cage during June of 2012.  He was examined by Dr. Parker, a physician at ACI.  Plaintiff states that Dr. Parker performed a "finger touch examination" and ordered an ultrasound on Plaintiff's upper right abdominal area.  After examining Plaintiff and reviewing the results of the ultrasound Dr. Parker concluded that the ultrasound revealed a polyp on Plaintiff's gallbladder.  Plaintiff asked if Dr. Parker would perform a biopsy to determine if the polyp was present and cancerous.  Dr. Parker replied that "the polyp would not have shown up on the ultrasound if it was not present" and the polyp did not appear to be cancerous.  Dr. Parker then referred Plaintiff to Regional Medical Center ("RMC") for a surgery consult.  (ECF No. 38 at 5.)

In October of 2012, Plaintiff was transferred to RMC and was seen by Dr. Osvaldo Contarini, a physician at Jacksonville Memorial Hospital, who told Plaintiff that his gallbladder needed to be removed.  Plaintiff says that he asked Dr. Contarini for a biopsy but that Dr. Contarini advised

Plaintiff that a biopsy was unnecessary and "cosmetic," and that the polyp was definitely present and was not cancerous.  (ECF No. 38 at 5.)

Dr. Contarini performed surgery to remove Plaintiff's gallbladder on January 4, 2013 at Jacksonville Memorial Hospital.  Dr. Contarini prescribed Plaintiff pain medication for post-surgery.  Plaintiff was subsequently transferred back to RMC on January 5, 2013. (ECF No. 38 at 5-6.)

Plaintiff alleges that the prescription for pain medication was never sent to RMC.  He represents that his first post-surgery followup was on January 8, 2013.  According to Plaintiff, one day after his followup appointment was the first time he received pain medication, and he was without pain medication for four days post-surgery.  During those four days, he suffered severe pain and the medical staff exhibited indifference.  (ECF No. 38 at 6.)

Plaintiff alleges that during the post-surgery followup on January 8, Dr. Contarini told him that the laboratory found no cancer in his gallbladder but there was also no polyp, and that his gallbladder had been removed unnecessarily.  Plaintiff says that Dr. Contarini told him that Dr. Parker misdiagnosed the polyp.  (ECF No. 38 at 6.)

Plaintiff was subsequently transferred to Jefferson Correctional Institution in July 2014 and sent to inmate sick-call for post-surgery followup in November 2014.  Plaintiff alleges that at this appointment the doctor told him that the metal clamp used during the surgery was found attached to the bile duct tube connected to his gallbladder and that an unnecessary and unauthorized surgical procedure had been performed on his intestines.  (ECF No. 38 at 6-7.)

Plaintiff claims that Dr. Contarini prescribed a fat intolerance diet due to the "botched surgery, intestinal surgical alterations, and digestive problems."  Plaintiff claims that the staff at ACI refused to renew his diet pass and discontinued the pain medications prescribed by Defendant Parker.  (ECF No. 38 at 7.)

Plaintiff claims that Dr. Parker's misdiagnosis of a polyp on his gallbladder constitutes deliberate indifference and led to the removal of his gallbladder, causing pain and digestive and intestinal dysfunction.  As to Dr. Alvarez, Plaintiff claims that he was deliberately indifferent to Plaintiff's medical needs because he failed to oversee Defendant Parker's treatment of Plaintiff, failed to ensure compliance with department policy, and generally failed to oversee the course of medical treatment at ACI.  Plaintiff

requests compensatory damages of $300,000 and punitive damages of $900,000 against each defendant, and injunctive relief in the form of removal of the metal clamp in his body.  (ECF No. 38 at 8-17.)

## II.  Standard of Review

### A.  Failure to State a Claim

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995).  If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of the claims, then the complaint is subject to dismissal.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"); *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1951-53 (2009) (*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the

elements of a constitutional . . . claim" are "not entitled to be assumed

true," and, to escape dismissal, complaint must allege facts sufficient to

move claims "across the line from conceivable to plausible.").

A *pro se* litigant's allegations are entitled to the benefit of liberal

construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, a

court does not have "license . . . to rewrite an otherwise deficient pleading

[by a pro se litigant] in order to sustain an action."  *GJR Investments v.

County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998), *overruled

on other grounds by Iqbal.*

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held

that deliberate indifference to the serious medical needs of prisoners

violates the Eighth Amendment prohibition against cruel and unusual

punishment.   To establish an Eighth Amendment violation stemming from

the deprivation of medical attention, the prisoner must set forth evidence of

an objectively serious medical need and prove that the officials acted with

attitudes of deliberate indifference to his needs.  *Farrow v. West*, 320 F.3d

1235, 1243 (11th Cir. 2003).  A claim that a prisoner has been deprived of

medical attention requires that the prisoner demonstrate (1) "an objectively

serious medical need," so grave that, "if left unattended, poses a

substantial risk of serious harm," and (2) that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.  *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991)*; see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle*, 429 U.S. at 107)); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of

a particular course of treatment.  Along with all other aspects of health care, this remains a question of sound professional judgment.'") (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ( "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

## B.  Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), inmates must exhaust all available administrative remedies before proceeding in federal court.  42 U.S.C. § 1997e ("[N]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner. . .until such administrative remedies as available are exhausted.").  The exhaustion provision is a mandatory precondition to bringing suit in federal court.  *Jones v. Bock*, 549 U.S. 199, 211 (2002).

Additionally, when a defendant raises the issue of failure to exhaust in the context of an inmate's 42 U.S.C. § 1983 action, it is treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008).

The Court uses a two part procedure to determine whether a plaintiff has failed to exhaust his remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). First, the Court must review the defendant's factual allegations along with those contained in the plaintiff's response, construing conflicting facts in the light most favorable to the plaintiff. If, after reviewing these facts, the defendant is entitled to have the complaint dismissed, it will be dismissed. *Id.* However, if the complaint is not subject to dismissal, the Court must make findings of fact necessary to resolve the exhaustion issue. *Id.*

The Florida Administrative Code delineates procedures for inmates to file a grievance against their prison or one of its officials. The inmate must first file an informal grievance, with several exceptions, including for medical grievances. Fla. Admin. Code § 33-103.005, § 33-103.006(3)(e). Medical grievances may be brought initially as formal grievances at the institutional level within 15 days of "[t]he date on which the incident or action being grieved occurred." Fla. Admin. Code § 33-103.006, § 33-

103.011.  If the inmate is dissatisfied with the response to the formal grievance, he may file an administrative appeal to the Office of the Secretary within 15 days of the date of the response to the formal grievance.  Fla. Admin. Code § 33-103.007, § 33-103.011(1)(c).

### III.  Discussion

Defendants have filed a motion to dismiss arguing that Plaintiff's claims of deliberate indifference should be dismissed for failure to state a claim and failure to exhaust administrative remedies as to one of the claims against Defendant Alvarez.  The Court will address the claims against each Defendant below.

### A.  Defendant Parker

Plaintiff has alleged that Dr. Parker was deliberately indifferent to his medical needs.  Plaintiff states that he went to Dr. Parker, a physician at ACI, complaining of abdominal pains.  Defendant Parker performed an examination and ultrasound, and based on the results he diagnosed Plaintiff with a polyp on his gallbladder.  Plaintiff alleges that Dr. Parker then referred him for a surgery consult at Regional Medical Center ("RMC").

Assuming that Plaintiff's abdominal pain amounted to an objectively

serious medical need, the facts alleged by Plaintiff do not support a conclusion that Dr. Parker's treatment was so inadequate as to constitute deliberate indifference.  Plaintiff, by his own allegations, received substantial care for his abdominal pains.  Dr. Parker examined Plaintiff, performed an ultrasound, rendered a diagnosis, and then based upon the diagnosis referred Plaintiff for a surgery consult at RMC.  There is nothing alleged in this course of events that arguably exhibits deliberate indifference by Dr. Parker.  To the contrary, these allegations demonstrate that Dr. Parker did not simply examine Plaintiff but because the results of the examination called for further treatment by a specialist, Dr. Parker referred Plaintiff for a surgery consult.

Plaintiff's challenge to the medical treatment he received from Dr. Parker is solely based upon Plaintiff's claim that Dr. Parker misdiagnosed the polyp on Plaintiff's gallbladder.  According to Plaintiff, Dr. Parker should have performed independent research before diagnosing the polyp and should have taken precautionary measures to ensure that his diagnosis was correct.[1]   (ECF No. 43 at 2-4.)

---

[1]Plaintiff states in his response that his claim is not one for medical malpractice, because the Eighth Amendment does not protect against malpractice.  (ECF No. 43 at 6.)

The fundamental flaw in Plaintiff's claim is that he equates an error in medical judgment with deliberate indifference.  There is an important difference between the two.  Where, as here, the claim is based upon a misdiagnosis the claim does not become a constitutional violation simply because the victim is a prisoner.  *Harris*, 941 F.2d at 1505.

In addition to the fact that an error in medical judgment alone is insufficient to demonstrate deliberate indifference, the facts alleged by Plaintiff fail to demonstrate that Dr. Parker's alleged misdiagnosis was the direct cause of his gallbladder removal. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)(action under § 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional violation).  The facts alleged in the complaint show the opposite. Dr. Parker did not direct that surgery should be performed nor did he make the determination to perform surgery or even perform the operation.  Instead, after reviewing an ultrasound—which Plaintiff alleges led Dr. Parker to diagnose a polyp on Plaintiff's gallbladder—Dr. Parker referred Plaintiff to an outside expert for a surgery consult. Dr. Contarini, a surgeon at Jacksonville Memorial Hospital, conducted the consultation and independently decided that Plaintiff's gallbladder should be removed.

Thus, even assuming for purposes of the motion to dismiss that Dr. Parker committed an error in judgment by diagnosing a polyp on Plaintiff's gall bladder, the misdiagnosis at best might demonstrate medical malpractice but not deliberate indifference.  And, even assuming Dr. Parker misdiagnosed the polyp there is no causal connection between the misdiangnosis and the surgical decision by Dr. Contarini to remove Plaintiff's gallbladder.  While Plaintiff potentially may have a claim for medical negligence, Plaintiff does not assert such a claim and instead attempts to transform a medical negligence case into one for deliberate indifference.

Further, to the extent Plaintiff claims that Dr. Parker was deliberately indifferent to his medical condition by failing to consult with other experts, Plaintiff's argument ignores the fact that Dr. Parker did exactly that by referring Plaintiff to an outside medical expert for a surgery consultation. And, even if Dr. Parker failed to consult and research other medical sources, as Plaintiff alleges, such a failure to consult would not constitute an Eighth Amendment violation.  *See Adams*, 61 F.3d at 1545 (stating that the decision to employ additional diagnostic techniques or forms of treatment is a matter of medical judgment and not a basis for Eighth

Amendment liability).

The bottom line is that Plaintiff's allegations even liberally construed as the Court must, allege nothing more than medical negligence against Dr. Parker, which is insufficient to establish a constitutional claim for deliberate indifference under the Eighth Amendment. Accordingly, the Court concludes that Plaintiff has failed to allege a claim against Dr. Parker for deliberate indifference under the Eighth Amendment upon which relief may be granted.

## B. Defendant Alvarez

Plaintiff purports to allege several claims against Dr. Alvarez. Plaintiff claims that Dr. Alvarez, the Chief Health Officer, was deliberately indifferent to his medical needs because Dr. Alvarez (1) failed to oversee and supervise Dr. Parker's treatment, (2) instituted a policy of reducing medical treatment to save money, and (3) refused to renew Plaintiff's medical diet pass.  For the reasons discussed below, the Court concludes that Plaintiff has failed to state a constitutional claim against Dr. Alvarez.

Plaintiff first claims that Dr. Alvarez, as the Chief Health Officer at ACI, was deliberately indifferent because Dr. Alvarez failed to appropriately supervise and oversee Dr. Parker's treatment of Plaintiff.

To the extent that Plaintiff's claims are based on a "vicarious liability" theory—that Dr. Alvarez is liable for the actions of Dr. Parker because Dr. Alvarez is Dr. Parker's supervisor—Plaintiff's claim is not cognizable under section 1983. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)(supervisory officials are not liable under section 1983 for the unconstitutional acts of subordinates on the basis of *respondeat superior* or vicarious liability).

Supervisory liability requires more. To establish supervisory liability a claimant must show that the supervisor either "personally participated" in the unconstitutional conduct or the supervisor's conduct is causally connected to the alleged constitutional deprivation. *Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003).  Because Plaintiff has not alleged direct involvement in his medical care by Dr. Alvarez but only that he supervised Dr. Parker—Plaintiff has failed to allege the required  "personal participation" component of supervisory liability.[2]

Plaintiff also alleges that Dr. Alvarez adopted a "utilization review mechanism for specialist consultation and physician's treating patients as a

---

[2] Additionally, even if Plaintiff had alleged that Defendant Alvarez "personally participated" in his medical treatment, as established above, the care that Plaintiff received at ACI by Defendant Parker was not a constitutional violation.

goal to limit the care provided as much as possible . . . ," basically

asserting that Dr. Alvarez had a policy of limiting treatment to save money.

According to Plaintiff, this policy resulted in poor medical care at ACI.

A causal connection can be established "when a history of

widespread abuse puts the responsible supervisor on notice of the need to

correct the alleged deprivation, and he fails to do so," or when a

supervisor's custom or policy results in deliberate indifference to

constitutional rights. *Braddy v. Fla. Dept. Of Labor & Employment*, 133

F.3d 797, 802 (11th Cir. 1998); *Rivas v. Freeman*, 940 F.2d 1491, 1495

(11th Cir. 1991).

While Plaintiff alleges that Dr. Alvarez had a policy of limiting

treatment, Plaintiff's allegations in this case show the opposite. Instead of

limiting treatment, Plaintiff not only received an ultrasound but was referred

by Dr. Parker to an outside specialist for a surgery consult. After the

surgery consult the surgery was performed by an independent physician at

an outside hospital.  Thus, while Plaintiff alleges Dr. Alvarez had a policy of

limiting treatment that policy did not come into play in this case because

Plaintiff's treatment was not limited but rather involved treatment by outside

specialists.

Moreover, to demonstrate that a "policy or custom" caused deliberate indifference to constitutional rights, Plaintiff must show that the supervisor had "actual or constructive notice of a flagrant, persistent, pattern of violations." *Goebert v. Lee County*, 510 F.3d 1312, 1332 (11th Cir. 2007)(quoting *West v. Tillman*, 496 F.3d 1321, 1329 (11th Cir. 2007)); *Keith v. DeKalb County, Georgia*, 749 F.3d 1034, 1049 (11th Cir. 2014)(plaintiff did not present evidence that sheriff was aware of routine violations of policy or that violations were a widespread problem). There is nothing alleged in the complaint regarding any other incidents that would place Dr. Alvarez on notice of a flagrant, persistent pattern of limiting treatment to inmates.  And, as discussed above, the treatment Plaintiff received was not limited in any way by cost saving but instead included consultation and surgery by outside specialists.  Plaintiff therefore has failed to allege a claim for deliberate indifference against Dr. Alvarez for supervisory liability based upon a custom, policy or practice.

Nevertheless, in light of Plaintiff's *pro se* status, the Court will give Plaintiff an opportunity to amend his Complaint to support his claim against Dr. Alvarez based upon Plaintiff's claim that Dr. Parker's misdiagnosis was the result of Dr. Alvarez's policy of limiting medical treatment.

Plaintiff's final claim against Dr. Alvarez is that Dr. Alvarez failed to renew Plaintiff's medical diet pass.  This claim should be dismissed for two reasons.  Plaintiff's allegations that Dr. Alvarez did not renew his diet pass fail to state a claim for deliberate indifference.  Additionally, even if Plaintiff did state a viable claim, the claim is unexhausted.

The decision of whether or not to issue a diet pass is a matter of medical judgment and does not subject the official to Eighth Amendment liability.  *Carter v. Broward County Sheriff's Dep't Medical Dep't*, 558 F. App'x 919, 922 (11th Cir. 2014); *Harris*, 941 F.2d at 1505.  In *Carter*, a state prisoner who suffered from HIV brought a civil rights action against the county sheriff's department and jail physician, alleging that they were deliberately indifferent to his medical needs because they discontinued his high-calorie/high-protein diet.  *Id*.  The Eleventh Circuit ruled that discontinuing the diet pass was a matter of medical judgment and did not rise to the level of deliberate indifference by the physician. *Id*.

The claim here is almost identical—Plaintiff claims that Defendant Alvarez failed to renew his diet pass for a fat intolerance diet after his surgery.  As in *Carter*, however, this is a matter of medical judgment, and

Plaintiff's disagreement with his course of treatment does not give rise to a

constitutional violation by Dr. Alvarez.  Accordingly, Plaintiff's claim that Dr.

Alvarez failed to renew his diet pass fails to state a claim for deliberate

indifference.

In addition to the fact that Plaintiff has failed to state a claim,

Plaintiff's claim is also due to be dismissed because Plaintiff failed to

exhaust his administrative remedies with respect to the diet pass claim.

Defendants have provided a log of grievances Plaintiff filed between

June 1, 2012, and March 30, 2015, the day the original Complaint was

filed.  None of the grievances Plaintiff filed during this time

period—including the grievances regarding Plaintiff's medical

treatment[3]—address Dr. Alvarez's failure to renew Plaintiff's diet pass.[4]

Accordingly, because Plaintiff has failed to comply with the grievance

procedures of the Department with respect to his diet pass claim, Plaintiff's

---

[3] As Defendants point out, informal grievance number 13-05-0666 addresses Plaintiff's receipt of a fat intolerance diet.  (ECF No. 42-1 at 3.)  However, the grievance addresses food service and their failure to comply with his dietary restrictions rather than Dr. Alvarez's refusal to renew his diet pass.  Moreover, even if this grievance did address the non-renewal of the diet pass, Plaintiff did not properly appeal the grievance in compliance with FDOC's procedures.

[4] Plaintiff  states that grievance log numbers 13-6-08165 and 13-6-08920 address his claims against Defendant Alvarez. (ECF No. 43 at 11-12.)  A review of the grievances, however, reveals that grievance 13-6-08165 pertains to a shaving pass and grievance 13-6-08920 addresses his surgery and alleged misdiagnosis.  (ECF No. 42-5, ECF No. 42-6.)  Neither grievance mentions Dr. Alvarez or the diet pass.

claim is also subject to dismissal for failure to exhaust administrative

remedies.

## IV.  Recommendation

For the foregoing reasons, it is respectfully **RECOMMENDED** that

the Motion to Dismiss By Defendants Parker and Alvarez, ECF No. 42,

should be **GRANTED** and the claims against Defendants Parker and

Alvarez should be **DISMISSED** for failure to state a claim upon which relief

may be granted.[5] The Plaintiff should be given leave to amend his

supervisory claim against Dr. Alvarez, failing which the case should be

---

[5] Defendants also make additional arguments in the motion to dismiss: (1) that they are entitled to monetary damages; (2) that Plaintiff is not entitled to injunctive relief; and (3) to the extent that Plaintiff sues Defendants in their official capacity for damages, they are immune from suit.  Without addressing these arguments in great detail, the issue of qualified immunity need not be reached because the Court has determined that neither Defendant committed a constitutional violation.  *See Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001)(finding that in analyzing a qualified immunity case, a court should first ask  whether, "on the facts alleged, a constitutional violation could be found.").  With respect to the issue of damages, Plaintiff has failed to state a constitutional claim, and accordingly he is not entitled to injunctive relief. *See Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005)("First, any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action, such as a constitutional violation . . . '[f]or a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6).'")(quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004)).  Finally, regarding Eleventh Amendment immunity, Plaintiff has not alleged that he is suing either Defendant in their official capacity, but to the extent that he has named them in their official capacities, Defendants are immune from suit. *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994)(state officials sued for damages in their official capacity are immune from suit in federal court).

dismissed without further notice.

       **IN CHAMBERS**  this 18th day of March 2016.

                    *s/Gary R. Jones*

                   GARY R. JONES
                   United States Magistrate Judge

## NOTICE TO THE PARTIES

       **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**