IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RICHARD ALLEN NEAL,

    Plaintiff,

v.                                            CASE NO. 5:15-cv-71-MW-GRJ

DR. PARKER, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, a prisoner presently incarcerated at Columbia Correctional Institution Annex, initiated this case by filing an amended complaint pursuant to 42 U.S.C. § 1983 (ECF No. 38). Presently pending before the Court is Defendant, Dr. Contarini's, Motion to Dismiss the Second Amended Complaint. (ECF No. 64.)

Plaintiff's claims against Dr. Contarini[1] stem from a surgery he performed to remove Plaintiff's gallbladder. In Count 2 of the Complaint, Plaintiff alleges that Dr. Contarini performed this surgery unnecessarily,

---

[1] Plaintiff's claims against Dr. Parker and Dr. Alvarez were dismissed for failure to state a claim. (ECF No. 59.) Thus, the relevant claims against Dr. Contarini are those in Counts 2 and 3 of Plaintiff's Second Amended Complaint.

removing a perfectly healthy gallbladder, and that Dr. Contarini also performed a procedure on Plaintiff's intestines without his consent. In Count 3, Plaintiff alleges that Dr. Contarini failed to remove a metal clamp used during the surgery.

While an incorrect diagnosis resulting in the unnecessary removal of a gallbladder and the failure to remove a metal clamp used during surgery may be actionable these allegations do not rise to the level of demonstrating deliberate indifference under 42 U.S.C. § 1983 and, therefore, are not actionable in federal court. Instead, these claims sound in medical malpractice, which is actionable under Florida law. Florida law, however, mandates compliance with specific pre-suit requirements before a complaint for medical malpractice may be filed. Plaintiff has failed to comply with these pre-suit requirements and therefore Plaintiff's claims against Dr. Contarini are due to be dismissed.

## I. Plaintiff's Allegations

The factual allegations against Dr. Contarini may be summarized as follows. While incarcerated at Apalachee Correctional Institution ("ACI"), Plaintiff began to experience sharp pains in his rib cage during June of 2012. Dr. Parker, a physician at ACI, examined Plaintiff and, after

reviewing the results of an ultrasound, concluded that there was a polyp on Plaintiff's gallbladder. Dr. Parker then referred Plaintiff to Regional Medical Center ("RMC") for a surgery consult.  (ECF No. 38 at 5.)

In October of 2012, Plaintiff was transferred to RMC, and Dr. Contarini, a physician at Jacksonville Memorial Hospital, told Plaintiff that his gallbladder needed to be removed.  Plaintiff says that he asked Dr. Contarini for a biopsy but that Dr. Contarini advised Plaintiff that a biopsy was unnecessary and a "cosmetic procedure" that FDOC would not authorize. Based on the ultrasound, Dr. Contarini concluded that the polyp was definitely present and did not appear to be cancerous.  (ECF No. 38 at 5.)

Dr. Contarini removed Plaintiff's gallbladder on January 4, 2013, at Jacksonville Memorial Hospital.  Dr. Contarini prescribed Plaintiff pain medication for post-surgery.  Plaintiff was subsequently transferred back to RMC on January 5, 2013, but he alleges that the prescription for pain medication was never sent to RMC or was lost at RMC. As a result, Plaintiff was without pain medication for four days post-surgery, and he suffered severe pain. (ECF No. 38 at 5–6.)

Plaintiff represents that his first post-surgery followup was on

January 8, 2013. At this appointment, Dr. Contarini told him that the laboratory did not find any cancer in Plaintiff's gallbladder. Additionally, Dr. Contarini told Plaintiff that the laboratory did not find any polyp, disease, or anything else wrong with Plaintiff's gallbladder. Plaintiff says that Dr. Contarini, therefore, removed Plaintiff's gallbladder unnecessarily. (ECF No. 38 at 6.)

Plaintiff was subsequently transferred to Jefferson Correctional Institution in July 2013. In November 2013 he was sent to inmate sick-call for post-surgery followup and chronic pain issues, and an x-ray was scheduled. Plaintiff alleges that at a followup appointment the doctor told him that the metal clamp used during the surgery was attached to the bile duct tube connected to his gallbladder and that an unnecessary and unauthorized surgical procedure had been performed on his intestines during the surgery. (ECF No. 38 at 6–7.)

Plaintiff claims that Dr. Contarini prescribed a fat intolerance diet due to the "botched surgery, intestinal surgical alterations, and digestive problems." Plaintiff also claims that upon his return from RMC the staff at ACI refused to renew his diet pass and discontinued the pain medications. (ECF No. 38 at 7.)

Plaintiff alleges that Dr. Contarini failed to ensure that Plaintiff's gallbladder actually needed to be removed before performing surgery and that Dr. Contarini left a metal clamp inside Plaintiff following the surgery, evidence of deliberate indifference to Plaintiff's health and well-being. Plaintiff also claims that Dr. Contarini assaulted and/or battered Plaintiff by performing a procedure on Plaintiff's intestines without Plaintiff's consent. (ECF No. 38 at 10–17.) While these events are troublesome, as discussed above, these claims sound in medical malpractice and not deliberate indifference.

As a result of Dr. Contarini's surgery, Plaintiff says his digestive system is dysfunctional, and he suffers from pain. Plaintiff requests compensatory damages of $300,000 and punitive damages of $900,000 against each defendant, and injunctive relief in the form of removal of the metal clamp in his body. (ECF No. 38 at 10–17.)

## II.  Standard of Review

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Hale v. Tallapoosa County*, 50

F.3d 1579, 1582 (11th Cir.1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of the claims, then the complaint is subject to dismissal. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"); *Ashcroft v. Iqbal*, 566 U.S. 662, 680–86 (2009) (*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true"; further, to escape dismissal the complaint must allege facts sufficient to move claims "across the line from conceivable to plausible").

A *pro se* litigant's allegations are entitled to the benefit of liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A court, however, does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998), *overruled on other grounds by Iqbal*, 556 U.S. 662.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment. To establish an Eighth Amendment violation stemming from the deprivation of medical attention, the prisoner must set forth evidence of an objectively serious medical need and prove that the officials acted with attitudes of deliberate indifference to his needs. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A claim that a prisoner has been deprived of medical attention requires that the prisoner demonstrate (1) "an objectively serious medical need" so grave that, "if left unattended, poses a substantial risk of serious harm," and (2) that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Generally, an inmate who receives a medical diagnosis and care, but

desires a different diagnosis or treatment, cannot show deliberate indifference. *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991)*; see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle*, 429 U.S. at 107)); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.'") (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ( "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988) ("Although the Constitution does require that prisoners be provided with a

certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

## III.  Discussion

Dr. Contarini requests the Court to dismiss Plaintiff's claims of deliberate indifference because they are actually claims of medical malpractice, which require Plaintiff to follow Florida's medical malpractice pre-suit requirements before bringing these claims.  Plaintiff has failed to do so and, therefore, the claims are due to be dismissed.

**A.  Plaintiff's claims against Dr. Contarini do not constitute deliberate indifference in violation of the Eighth Amendment; instead, they are claims of medical negligence or medical malpractice.**

Plaintiff has alleged that Dr. Contarini was deliberately indifferent to his medical needs and that he assaulted/battered Plaintiff. Specifically, Plaintiff claims that Dr. Contarini unnecessarily removed his gallbladder based on an erroneous diagnosis, that Dr. Contarini performed a surgery on Plaintiff's intestines without his consent when removing his gallbladder, and that Dr. Contarini left a metal clamp attached inside of Plaintiff's body following the surgery. (ECF No. 38 at 10–12.)

Assuming that Plaintiff's abdominal pain amounted to an objectively serious medical need, the facts alleged by Plaintiff do not support a

conclusion that Dr. Contarini's treatment was so inadequate as to constitute deliberate indifference; instead, these facts demonstrate at best a claim for medical malpractice. Under Florida Statutes § 766.106(1)(a), "'Claim for medical negligence' or 'claim for medical malpractice' means a claim arising out of the rendering of, or the failure to render, medical care or services." Medical malpractice claims do not rise to the level of deliberate indifference.

Plaintiff, by his own allegations, received substantial care for his abdominal pain from Dr. Contarini. After Dr. Parker's referral, Dr. Contarini advised Plaintiff that he needed to remove Plaintiff's gallbladder. When Plaintiff asked Dr. Contarini about the potential to have a biopsy performed, Dr. Contarini—like Dr. Parker—informed Plaintiff that the procedure was unnecessary because the polyp did not appear to be cancerous based on the ultrasound. Dr. Contarini then removed his gallbladder. (ECF No. 38 at 6.)

One of Plaintiff's challenges to the medical treatment he received from Dr. Contarini is that Dr. Contarini unnecessarily removed the gallbladder after Dr. Parker misdiagnosed the polyp. According to Plaintiff, Dr. Contarini failed to ensure that the medical condition actually existed.

Further, Plaintiff asserts that Dr. Contarini failed to abide by the typical methods of determination generally accepted for surgeons before operating. (ECF No. 38 at 10.)

The problem with Plaintiff's claim is that he incorrectly equates an error in medical judgment with deliberate indifference. There is an important difference between the two. Where, as here, the claim is based upon a misdiagnosis, the claim does not become a constitutional violation simply because the victim is a prisoner. *Harris*, 941 F.2d at 1505. Further, to the extent that Plaintiff suggests that Dr. Contarini should have consulted other medical sources or consulted with others about Plaintiff's medical condition, such a failure to consult would not constitute an Eighth Amendment violation. *See Adams*, 61 F.3d at 1545 (stating that the decision to employ additional diagnostic techniques or forms of treatment is a matter of medical judgment and not a basis for Eighth Amendment liability). While Plaintiff may have a viable claim for medical negligence, Plaintiff attempts to transform a medical negligence or medical malpractice case into one for deliberate indifference.

As discussed above, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of

treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (quoting *Estelle*, 429 U.S. at 107). The bottom line is that Plaintiff's allegations, even liberally construed as the Court must, allege nothing more than medical negligence or medical malpractice by Dr. Contarini, which is insufficient to establish a constitutional claim for deliberate indifference under the Eighth Amendment.

Plaintiff's second challenge to the medical treatment he received from Dr. Contarini is that Dr. Contarini performed an unauthorized surgery on Plaintiff's intestines, constituting assault and/or battery. Plaintiff alleges this surgery was not authorized by him, and the surgery was not supposed to be part of the gallbladder removal surgery. As a result, Plaintiff alleges that both his intestines and digestive system are permanently dysfunctional. (ECF No. 38 at 10.)

Without providing much detail, Plaintiff asserts that Dr. Contarini removed or altered Plaintiff's intestines during the removal of Plaintiff's galbladder—an unnecessary procedure to which Plaintiff did not consent. (ECF No. 38 at 7, 10.) Under Florida law, "[T]he better rule is to allow a

plaintiff to bring his action for failure of a doctor to secure informed consent prior to operation in either negligence or assault and battery." *Brown v. Wood*, 202 So. 2d 125, 130 (Fla. Ct. App. 1967). To the extent that the Court construes Plaintiff's claim as a claim for negligence or medical negligence, Plaintiff cannot proceed because the claim does not rise to the level of deliberate indifference as previously discussed. On the other hand, to the extent the Court construes this claim as a claim for assault and battery, the claim is still due to be dismissed for the reasons discussed below.

      Plaintiff's third challenge to the treatment he received from Dr. Contarini is that Dr. Contarini left a metal clamp used during the gallbladder removal surgery attached inside Plaintiff. Plaintiff asserts that this metal clamp was discovered during a post-surgery x-ray exam. Plaintiff alleges that this conduct constitutes deliberate indifference. As a result of Dr. Contarini's failure to remove this metal clamp, Plaintiff states that he suffered serious harm. (ECF No. 38 at 11–12.)

      Rather than constituting deliberate indifference, however, the failure to remove the metal clamp is a classic example of medical negligence or malpractice because it is a claim arising out of the rendering of medical

care, as described in the Florida Statutes. Fla. Stat. § 766.106(1)(a). To rise to the level of deliberate indifference and to violate the Eighth Amendment, the conduct must not—as mentioned above—be "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258. Again, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley*, 475 U.S. at 319. Because the facts alleged by Plaintiff allege nothing more than claims for medical malpractice and because medical malpractice does not constitute deliberate indifference, Plaintiff has failed to state a claim against Dr. Contarini under 42 U.S.C. § 1983 for a violation of the Eighth Amendment.

## B.  Because Plaintiff failed to comply with Florida's pre-suit requirements for claims of medical malpractice, Plaintiff's claims are due to be dismissed.

Because Plaintiff's claims regarding Dr. Contarini's medical treatment are actually claims for medical negligence or malpractice as defined by Florida Statute § 766.106(1)(a), Plaintiff was required to comply with Florida law pre-suit hurdles before bringing these claims. Plaintiff has failed to comply with these requirements, thus, warranting dismissal of Plaintiff's

claims. *See Gross v. White*, 340 Fed. App'x 527, 532 (11th Cir. 2009) (describing the proper dismissal of medical negligence claims for failure to comply with Florida's pre-suit requirements).

Chapter 766 of Florida Statutes contains the pre-suit requirements for medical malpractice suits. Prior to sending notice of intent to file a medical malpractice suit, the claimant must investigate to determine whether reasonable grounds exist to support a claim for medical negligence and have a medical expert write an opinion corroborating those reasonable grounds. Fla. Stat. § 766.203(2). After the investigation is complete, the claimant must send notice of intent to sue for medical negligence to each prospective defendant and wait 90 days for the defendant or the defendant's insurer to determine the potential liability of the defendant and send a response to the claimant. Fla. Stat. § 766.106(2)–(3).

Dr. Contarini represents that Plaintiff failed to comply with these pre-suit requirements for bringing a medical negligence or malpractice claim, ECF No. 64 at 6. Notably, Plaintiff fails to allege anything to the contrary or dispute that he failed to comply with these pre-suit requirements. (*See* ECF No. 67.)  Accordingly, Plaintiff's claims against Dr. Contarini are due to be

dismissed for failure to comply with Florida's pre-suit requirements.

In addition to Plaintiff's failure to comply with Florida's pre-suit requirements for medical malpractice claims, Plaintiff's claims are due to be dismissed because the statute of limitations for filing a medical malpractice claim against Dr. Contarini has expired. "An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.11(4)(b).

According to Plaintiff, he learned of the unnecessary removal of his gallbladder at his post-surgery followup on January 8, 2013. (ECF No. 38 at 6.) Plaintiff provided his original complaint to Jefferson CI for mailing on March 30, 2015, more than two years after he discovered the incident giving rise to his claim. (ECF No. 38.) Thus, Plaintiff may not now bring a medical negligence or malpractice claim against Dr. Contarini for the unnecessary removal of his gallbladder.[2]

---

[2] The same is not true for Plaintiff's claim against Dr. Contarini for failing to remove the metal clamp used during surgery. Based on Plaintiff's allegations, his two-year statute of limitations period did not expire for this claim because Plaintiff alleges that he did not discover this until a followup appointment in November 2013—less than two years prior to filing his Complaint. (ECF No. 38 at 6–7.)

**C. Even if the Court liberally construes Plaintiff's claim that Dr. Contarini performed an unnecessary and unauthorized procedure as a claim for battery, the claim is still due to be dismissed .**

While Dr. Contarini does not address separately Plaintiff's claim for battery based upon the procedure performed on his intestines without Plaintiff's consent, the claim is still due to be dismissed even if the Court liberally construes the claim as one for battery rather than medical negligence.[3]

Notably, "[b]y the early twentieth century, battery was well established in the United States as a cause of action by a patient against a physician for damages in performing surgery without the patient's consent." *Gouveia v. Phillips*, 823 So. 2d 215, 223 (Fla. Dist. Ct. App. 2002); *see also Schloendorff v. Soc'y of N.Y. Hosp.*, 211 N.Y. 125, 129–30 (1914) ("In the case at hand, the wrong complained of is not merely negligence. It is trespass. Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for

---

[3] If the Court instead construes the claim regarding the procedure on Plaintiff's intestines as one of medical negligence or malpractice arising from the gallbladder removal surgery, then the claim is due to be dismissed for the reasons previously stated regarding Plaintiff's failure to comply with Florida's pre-suit requirements.

*Case No: 5:15-cv-71-MW-GRJ*

which he is liable in damages.").[4] Although Plaintiff does not provide much detail regarding the complained of procedure, he does state that "Dr. Contarini removed or altered Plaintiff's intestines while in the course of the gallbladder surgery which was not authorized by the Plaintiff to perform[.] Thus Dr. Contarini did lawfully committ [sic] an assult [sic] and or battery upon Plaintiff knowingly and willfully by doing this." (ECF No. 38 at 10.)

Even if the Court construes Plaintiff's claim as a claim for battery, the claim is still due to be dismissed because it is a state law claim over which the Court does not have subject matter jurisdiction. The Court has supplemental jurisdiction over all claims that are part of the same case or controversy over which the Court has original jurisdiction. 28 U.S.C. § 1367(a). The Court, however, may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

---

[4] "*Schloendorff* received approbation in Florida in *Chambers v. Nottebaum*, 96 So. 2d 716, 718 (Fla. 3d DCA 1957)." *Gouveia*, 823 So. 2d at 223–24.

In this case, the Court finds it would make the most sense to decline supplemental jurisdiction over any state law battery claim for at least several reasons. First, the Court has recommended dismissal of Plaintiff's other claims and therefore there are no other remaining claims in this case. Secondly, the parties have not conducted any discovery nor has the Court been required to expend judicial resources resolving issues related to the merits. Third, if Plaintiff wishes to pursue any medical malpractice claim against Dr. Contarini in state court (assuming the statute of limitations has not expired) it would be more appropriate to litigate the battery claim in state court with the medical malpractice claim because the claims are both related to the same gallbladder surgery. Accordingly, for these reasons, Plaintiff's state law battery claim also is due to be dismissed.

## IV.  Recommendation

For the foregoing reasons, it is respectfully **RECOMMENDED** that the Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 64, should be **GRANTED,** the Second Amended Complaint should be **DISMISSED** and final judgment should be entered.

IN CHAMBERS  this 11th day of January 2017.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**